UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JAMES GRAHAM and                                    Case No. HK 13-02132
BRENDA S. GRAHAM,                                   Hon. Scott W. Dales

                    Debtors.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

James and Brenda Graham (the "Debtors") filed their chapter 11 Plan on December 4, 2013 (the "Plan," DN 53), proposing to "cram down" the secured claim of their largest creditor, MICB-PCB RE HOLDINGS IV, LLC (the "Creditor). In response, the Creditor filed its Objection to the Disclosure Statement (DN 60), contending that the court should not approve a disclosure statement for an unconfirmable plan. More specifically, the Creditor argues that the Plan impermissibly modifies the Creditor's rights as holder of a claim secured only by the Debtors' residence, contrary to 11 U.S.C. § 1123(b)(5).[1] The Debtors, in contrast, argue that §1123(b)(5) does not protect against modification of a commercial guaranty claim, even a claim secured by a mortgage on residential real estate.

On January 10, 2014, the court held a disclosure statement hearing at which the parties discussed the Debtors' Plan and the Creditor's objection. It is clear from that discussion that, unless the court permits the Debtors to modify the Creditor's claim under §§ 506(a) and

---

[1] In this Opinion, statutory references shall be to title 11 of the United States Code except as otherwise indicated.

1123(b)(5), the Plan's feasibility is doubtful — they simply cannot afford to pay the Creditor's claim in full.

The parties recognized that their dispute, though raised in response to the Disclosure Statement, directly implicates plan confirmation. The Debtors, therefore, withdrew the Disclosure Statement on the record at the hearing, but left the Plan in place, asking the court to resolve the legal dispute underlying Creditor's objection as part of plan confirmation, addressing this aspect of the contested matter on the papers to be submitted. With the parties' consent, the court agreed to consider and decide whether the Creditor's secured claim is immune from modification under § 1123(b)(5). The parties also agreed the court should decide the issue on the existing record, drawing reasonable inferences from the pleadings filed. The court has carefully reviewed the parties' briefs[2] and has determined that, for the reasons stated in this Opinion, the Creditor's claim is non-modifiable under §§ 506(a) and § 1123(b)(5).

## II. JURISDICTION

The court has subject matter jurisdiction over the Debtors' bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the case has been referred to the court by the United States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). This contested matter is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(L) because it involves plan confirmation issues.

## III. FACTUAL BACKGROUND

Several crucial facts are not in dispute. Mr. Graham is the one hundred percent owner of Portage Oil Company ("Portage Oil"). On August 18, 2004, as part of a larger commercial

---

[2] *See* Creditor's Brief Regarding Modification of Claim ("Creditor's Brief," DN 63); Debtors' Response to Creditor's Brief Regarding Modification of Claim ("Debtors' Response Brief," DN 66).

financing arrangement between Portage Oil and the Creditor,[3] the Debtors executed an Unlimited Continuing Guaranty in favor of the Creditor guaranteeing the repayment of "all past, present and future obligations"[4] of Portage Oil Company (the "Guaranty"). The Guaranty also provides that the Creditor "may proceed directly against the Guarantor in the event of any default by the Borrower *without resort to any other persons, to the assets of the Borrower, to any collateral security granted by the Borrower to the Beneficiary*, or the liquidation of any collateral security given hereunder to secure this Guaranty." Creditor's Brief, Exhibit 1, Guaranty at 1 (emphasis added). By the terms of the Guaranty, it is secured by a "mortgage, deed of trust, trust deed or security deed dated 8/18/2004"[5] against the Debtors' residence located in Portage, Michigan. There is a question, however, as to whether the Mortgage attached as Exhibit 2 to the Creditor's Brief is the Mortgage securing the Guaranty obligation. The Mortgage identifies the "Borrower" as "JAMES G. AND BRENDA S. GRAHAM, HUSBAND AND WIFE," (rather than Portage Oil) and states that the Mortgage secures indebtedness under an "Equity Line" pursuant to which the "Borrower may, from time to time, obtain advances . . ." (rather than the Guaranty).[6] However, because the Guaranty specifically refers to a mortgage dated 8/18/2004 against the Debtors' residence and the Debtors executed the Mortgage on the same date to encumber their residence, the court infers that the Mortgage was, in fact, given to secure the Guaranty obligation.[7]

The parties do, however, dispute whether the Debtors actually intended the Mortgage, which the Creditor offers as Exhibit 2, to be the only security for the Guaranty obligation. The

---

[3] Portage Commerce Bank was the original lender and Guaranty beneficiary. Portage Commerce Bank merged into Michigan Commerce Bank, which then assigned its rights to the Creditor, its wholly owned subsidiary. For the purposes of deciding this objection, the Debtors have not challenged the Creditor's standing under the Guaranty.

[4] Creditor's Brief, Exhibit 1, Guaranty at 1.

[5] *Id*. at 2. *See also* Creditor's Brief, Exhibit 2, Mortgage (the "Mortgage").

[6] Creditor's Brief, Exhibit 2, Mortgage at 1.

[7] In its Brief, the Creditor explains that the Mortgage was "prepared by in-house personnel" and contains "errors" that are merely "neglectful." Creditor's Brief at 8.

Debtors allege that the Creditor holds additional claims against Portage Oil that are secured by additional collateral. Although the Debtors reserve their arguments to challenge the validity of the Mortgage, their brief does concede that "[t]he intent of the Debtors was that the Mortgage was simply one of many forms of collateral available to Creditor should the Business Entities default on the promissory notes." *See* Debtors' Response Brief at p. 3.

## IV. ANALYSIS

The issue before the court is whether the Creditor's commercial Guaranty claim secured by the Debtors' non-purchase money Mortgage can be modified in their chapter 11 Plan despite the following language within § 1123(b)(5):

> (b) Subject to subsection (a) of this section, a plan may—
>
>         *      *      *
>
>  (5) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*

11 U.S.C. § 1123(b)(5) (emphasis added). Although there are very few published opinions in which courts have analyzed § 1123(b)(5), many courts have considered this issue in the context of a chapter 13 case using the identical statutory language from § 1322(b)(2).

In the chapter 13 context, courts have wrestled with the application of § 1322(b)(2) in cases involving non-purchase money mortgages primarily because it is at odds with the familiar legislative history suggesting that Congress intended these sections to apply in consumer rather than commercial transactions. *See* H.R. Rep. No. 103-835, at 46 (1994), (*reprinted in* 1994 U.S.C.C.A.N. 3340, 3354) ("This amendment conforms the treatment of residential mortgages in chapter 11 to that in chapter 13, preventing the modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence. Since it is intended to

apply only to home mortgages, it applies only when the debtor is an individual.  It does not apply to a commercial real property, or to any transaction in which the creditor acquired a lien on real property other than real property used as the debtor's residence."); *See also Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 4-7 (1st Cir. 1996) (reviewing legislative history of §§ 1123(b)(5) and 1322(b)(2)).

The Debtors urge the court to rely on this legislative history, rather than the plain language of § 1123(b)(5), to find that the Debtors may modify the Creditor's Guaranty claim because the Mortgage was given as part of a larger commercial loan transaction and allegedly is secured by additional collateral.  This argument, however, ignores the nature of the Guaranty as an independent undertaking, related to the principal transaction but certainly distinct.

Cases from within our Circuit and our State confirm that although the Guaranty was given as part of a larger commercial loan transaction, it is an independent obligation that the Debtors owe to the Creditor.  *See Mazur v. Young*, 507 F.3d 1013, 1019 (6th Cir. 2007) (a guaranty is "'an *independent, collateral agreement* by which [the guarantor] undertakes to pay the obligation if the primary payor fails to do so.'") (citing *First Nat'l Bank & Trust Co. of Ann Arbor v. Dolph,* 287 Mich. 219, 283 N.W. 35, 37-38 (Mich.1938) (quoting *Bedford v. Kelley,* 173 Mich. 492, 139 N.W. 250, 252 (1913)) (emphasis added).  There is no question that, absent some other litigation determining otherwise, the Guaranty is secured by a Mortgage on the Debtors' residence.

The Debtors also argue that applying the anti-modification language of § 1123(b)(5) to their indisputably commercial transaction violates legislative intent.  Nevertheless, when a statute is clear and unambiguous on its face, as it is here, "resort[ing] to legislative history for interpretation is improper . . . ."  *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir.),

*cert. denied*, 500 U.S. 959, (1991) (*citing Burlington Northern R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, (1987)). Instead, the court is directed to look at the "plain language of the statute itself" and if it is found to be "unambiguous, then that language is regarded as conclusive unless there is a clearly expressed legislative intent to the contrary." *Id*. at 601 (citing *Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir.1988). In general, federal courts consult legislative history only when a statute is ambiguous, not to create the ambiguity in the first place. *Id.* The word "claim," as it is broadly defined in § 101(5) and used in § 1123(b)(5), encompasses payment rights arising out of commercial obligation and consumer transactions, and certainly the debt owed by the Debtors to the Creditor under the Guaranty. The Debtors are effectively asking the court to read § 1123(b)(5) as if Congress chose the narrower term, "consumer debt," rather than the broader term, "claim." *Compare* 11 U.S.C. § 101(5) ("claim" means "any right" to payment) with *id.* § 101(8) ("'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose"). The plain language of the statute favors the Creditor's interpretation, as the court noted in its Order Denying Motion for Relief from Stay (DN 57).

This court is mindful that other courts make exceptions to this well-known general rule in cases where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters" and "a myopic allegiance to the literal language of the Act produces such an 'absurd' result." *U.S. v. Smith*, 874 F.2d 371, 372-73 (6th Cir. 1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982)). Applying the literal language of § 1123 (b)(5) in this case, however, does not produce an "absurd" result, only a result at odds with the "unenacted" text from within a legislative report.

Furthermore, in a similar dispute involving the analogous provision in chapter 13, the Sixth Circuit held that the language of §1322(b)(2) is "clear and unambiguous on its face and

does not permit the interpretation that the statute has application only to 'enabling' loans." *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208, 210 (6th Cir. 1993). Given that the statutory language of §§ 1123(b)(5) and 1322(b)(2) is identical, the court holds that the interdiction against modification contained within § 1123(b)(5) is likewise not limited to "claims" that are purchase money, consumer obligations.

The Debtors' argument that they intended the Mortgage as "simply one of many forms of collateral available to Creditor should the Business Entities default on the promissory notes," does not change this analysis. *See* Debtors' Response Brief at p. 3. The Creditor's authority to pursue collection directly from the Debtors, despite the fact that alternative collateral from another entity may have been available to satisfy the Creditor's claim against Portage Oil, derives from the express terms of the Guaranty and Michigan law.

The Guaranty conspicuously and unequivocally states that if Portage Oil defaults, the Creditor may proceed directly against the Debtors' personal residence without resorting to other collateral. *See* Creditor's Brief, Exhibit 1, Guaranty at 1. Furthermore, Michigan courts have held that "if the language of a contract is unambiguous, 'the language is reflective of the parties' intent as a matter of law." *Burton v. William Beaumont Hospital,* 373 F.Supp.2d 707, 718 (E.D.Mich.2005) (citing *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251 (Mich. 2003)). When, under the "plain language" of a guaranty a guarantor unconditionally and absolutely" agrees to pay the indebtedness of a borrower, the beneficiary is not required to proceed against other collateral before seeking payment from the guarantor. *Comerica Bank v. Cohn*, 805 N.W. 2d 544, 550 (Mich. App. 2010).

## V. CONCLUSION

The court has considered the Debtors' other arguments and finds them without merit. On the present record the court concludes that § 1123(b)(5) prevents the Debtors from modifying the Creditor's rights using the plan confirmation process.  Nothing in this Opinion, however, is intended to foreclose the Debtors from challenging under state law or another section of the Bankruptcy Code the validity of the Creditor's Mortgage claim, or from amending their Plan in compliance with the court's conclusions and the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED that the confirmation of the Plan in its current iteration is DENIED, without prejudice to any amendment consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Joseph A. Lucas, Esq., Kerry D. Hettinger, Esq., the Debtors' 20 largest creditors, and the Office of the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 8, 2014**



Scott W. Dales
United States Bankruptcy Judge